Lee, J.
I am of opinion that the third plea offered by the plaintiffs in error that Clement one of the persons to whom the bond sued on was made payable, was not one of the justices sitting in the court at the time the bond was executed, was naught and was properly rejected by the court. By the bond itself the parties who executed it acknowledged and declared that the four persons to whom it was made payable were justices of the county, then sitting, and it was acknowledged by them in open court and ordered to be recorded. They are therefore estopped now from averring the contrary upon the general principles of estoppels. But if there were any doubt about this, *266 the question is put at rest by- a provision of the Code which declares that upon any official bond executed before that act was in force suit may be maintained in the names of the judges, justices or other persons to whom such bond is payable, whether any of the obligees be alive or not, and although any justice to whom the bond is made payable was not sitting in the court at the time of its execution or although any other justice was sitting at that time. Code of Virginia, ch. 168, § 3, p. 640.
The defendant in error having given in evidence the bond of Rosser and his sureties, the decree of the 12th of October 1850, the execution sued out upon that decree and the return “no effects” showed herself prima facie entitled to recover in this action unless her right was barred by the statute of limitations; and this is resolved into the enquiry when the cause of action accrued.
By the fifth section of chapter 149 of the Code, p. 591, it is provided that every action upon a bond of an executor, administrator &c. shall be brought within ten years next after the right to bring the same shall have first accrued; and by the sixth section it is declared that the right of action of a person obtaining execution against any ¡personal representative of a decedent or to whom payment or delivery of estate in the hands of such representative shall be ordered by a court acting upon his account, upon the official bond of such representative, shall be deemed to have first accrued from the return day of such execution or from the time of the right to require payment or delivery upon such order. If this provision is to furnish the rule of decision here there is an end of the case ; for the decree in favor of Mrs. Depriest was rendered on the 12th of October 1850 ; the execution sued out thereon and returned “ no effects” was dated 21st of November 1850 and was returnable on the first Monday in January 1851, and the suit was brought on the *267 16th of January 1851. But the argument of the appellant’s counsel has assumed that this provision does not apply, for he insists that the wrong to the interested was the sale of the slave Squire in 1825 by which the condition of the bond was broken and that the right of action accrued at that time. And to make the argument complete it must be assumed that as the right of action was thus barred by the operation of the act of March 30, 1826, the provision in the Code above cited could not serve to restore it nor could it prescribe any other or different period from which the bar of the statute which its enacts should be computed in a suit brought after it took effect to enforce any right growing out of this original supposed cause of action.
Waiving any enquiry into the correctness of this last proposition, let us briefly consider when the cause of action upon this bond for the matter in controversy should be said to have accrued independently of the provision of the statute.
The subject sought to be recovered was the share of Mrs. Depriest in the hires of a slave named Squire as to which the testator appears to have died intestate; for which hires she claimed that the executor was liable to account. Rosser the executor had sold this slave in 1825 and purchased him, himself, and he claimed to hold him afterwards as his own property; whilst Mrs.
Depriest insisted that he was to be considered as a part of the estate of the testator notwithstanding the sale, and so that the executor should account for the hires for all the time the slave was held by him. The executor had not settled his accounts, and there was therefore nothing to show the balance in his hands by which a foundation could be laid for the present demand. A suit in chancery became necessary to set aside the alleged sale, restore the ‘slave to the estate and hold the executor to an account of the hires. *268 This was accomplished by the decree in the chancery cause of the 27th of April 1841; for although the bill did not charge the fact of the sale of Squire, it charged that a negro man whose name was left in blank, not named in the will, came to the hands of the executor, and called for a discovery in relation to him and to the manner in which he had been disposed of: Eosser in his answer stated that he had sold Squire for six hundred dollars, having previously held him about a year or sixteen months, and expressed his willingness to account for the amount of the sale and a reasonable hire while the slave was thus in his possession. The court however by its decree adjudged the sale invalid and set it aside, and declared that Eosser should account for the hires from the time he qualified as executor until the slave should be sold as therein after directed. And this decree was affirmed by the Court of appeals on the 17th of October 1S48, that court declaring that the accountability of Eosser for the slave was just the same as if such sale had not been made no title having been thereby acquired by him. Thus after a controversy of nearly fourteen years, it was finally adjudged that the executor was to be regarded as having held the slave as the property of the estate of his testator during all that time and as then liable for the whole amount of the hires. And an account having been taken on the principles of the decree of the Court of appeals, the court on the 12th of October 1850 rendered a. decree against the executor for the amount of the hires.
Now upon this simple statement of the case it would seem impossible to say that this cause of action upon the executorial bond accrued at such a period that it was barred in January 1851 when this suit was brought. The case Was simply that of an executor who in 1850 was found to have in his hands assets of the estate of his testator which he was required by the *269 decree of the court to pay to a distributee but failed so to do. Concede that the executor violated his duty and the condition of his bond by making an sale of the slave instead of making distribution or failing to settle his accounts, it does not follow that the period of the limitation for the present demand is to be computed from the time of such delinquency. It is not always that the right of action upon a bond with condition shall be deemed to llave accrued from the time the condition is broken. Thus in an action upon a marshal’s bond, the breach of the condition alleged was that by the order of the District court of the United States for the district of Louisiana, in an admiralty case, the marshal was directed to sell the schooner Estrella and her cargo and to hold the proceeds subject to the order of the court; that the sale was made and the money received by the marshal; that the court by its final decree directed the vessel and cargo or the proceeds thereof to be restored to the libellants, and that the marshal had failed to pay over a part of the proceeds. By law it was made the duty of the marshal to bring the proceeds of sale into court to be deposited in bank in the name and to the credit of the court. This he had failed to do and this violation of his duty took place more than six years before the suit on the bond was commenced. The act of congress of 1806 in relation to suits on marshals’ bonds enacts that suits thereon for cause of action thereafter to accrue, shall be commenced within six years after the right of action shall have accrued and not afterwards, and this statute was relied on as a bar to the action. The court held however that its mandate was not fully performed till the proceeds wTere brought into court or paid over to the libellants and that if the condition of the bond was broken by the failure to bring the money into court, yet that the *270 plaintiffs’ right of action should not be deemed to ^iave accrued until the order directing the proceeds to paid over to them, nor (an appeal having been ^611) until its affirmance : and this affirmance being within six years before the institution of the suit, that the action was not barred. Montgomery v. Hernandez, 12 Wheat. R. 129. So in an action brought in October 1845 against the sureties of a constable upon his official bond in North Carolina, it appeared that certain claims against persons who were good had been placed .in the constable’s hands for collection in February 1842 and the statutory limitation of three years was set up as a bar to the recovery: and the argument was that if the officer could have collected the claims between February and October 1842, his failure to do so was a breach of the condition of his bond for which a right of action at once accrued and so the sureties were protected by the statute. But the court held otherwise. “ The omission to collect, (said Pearson, J.) was a breach of a continuous nature. Admit there was a breach by a failure to collect before October 1842, non constat that there was not a breach for a failure to collect after October 1842 to which latter .breach the statute was no bar.” State v. Patton, IS Ired. R. 421. From these cases it may be deduced that although there may be a right of action upon the first breach of the condition of a bond with a penalty, and the whole penalty may be recovered to stand as a security for such other sums as may be afterwards assessed on scire facias, yet the plaintiff is under no necessity to bring his action at once. He may waive the first'breach and when a subsequent breach occurs, he may bring his suit and assign the latter; and the right of action as to it will not be deemed to have accrued until the time at which it occurred. And this result is supported by other cases. Sanders v. Coward, *271 15 Mees. & Welsb.,48; Blair v. Ormond, 7 Eng. Law & Eq. 318; Arnott v. Holden, 16 Eng. Law & Eq. 142; Austin v. Moore, 7 Metc. R. 116.
Whether therefore, Rosser the executor committed a breach of the condition of his bond by the illegal sale of the slave, or by failing to settle his account, or (if the sale be treated as a nullity) by failing to pay over the value of the slave and his hires to those entitled at an earlier period, it seems clear that after the amount of those hires was ascertained in the chancery suit and declared to be a part of the assets of the estate of his testator with which he was chargeable and when he was required by the decree of October 1850 to pay over the same to those entitled and execution in favor of Mrs. Depriest for her share was returned “ no assets,” there was a clear right of action in her favor upon the executorial bond to which the statute of limitations could have no application. See Beale's adm'r v. Botetourt Justices, 10 Gratt. 278, (opinion of Moncure, J.) which commenced some years before the Code of 1849 took effect.
Whether therefore the period, at which the cause of action upon the executorial bond for the matter in controversy here, shall be said to have accrued, be determined by the provision in the Code already referred to, or upon general principles, the result is the same. In neither case has the statute of limitations any application. The provision of the Code is in effect but declaratory of what the law would have been without it in this precise case.
That the securities might have been made parties in the chancery cause and in fact were at one time made parties but the bill was afterwards dismissed as to them will not impair the present right of action on the bond. Parties may often proceed in equity against an executor and may also make the sureties parties in the cause with a view to their ultimate liability. But *272 they are under no necessity to make them such parties and the failure to do so will in no manner affect the right to proceed against them by action on the bond after they shall have established their demands against the executor, either under the statute of limitations or otherwise. Creditors upon legal demands sometimes may, and upon equitable demands must, come in the first instance into equity to assert their claims and may make the sureties parties but they may omit them and after establishing their claims against the executor and failing to get satisfaction by execution, may then sue upon the official bond, and their failure to unite the sureties in the chancery suit as defendants with the executor will in no manner affect the question as to when the cause of action upon the official bond accrued. That a decree creditor might sue upon such a bond as well as a judgment creditor was settled even before the provision of the Code, (ch. 130, § 23, p. 544,) which covered both. Bush v. Beale, 1 Gratt. 233. And it is now held even in England that an action of debt will lie upon a decree ascertaining a certain sum to be due and requiring its payment. See cases cited 2 Rob. Pr. (ed. 1855,) p. 124; 1 Ibid. 204.
That the decree was de bonis testatoris and not de bonis propriis is a matter which cannot avail the appellants. The appellee might complain that the decree was restricted to the assets in the hands of the executor, and for that cause might have claimed a reversal in an appellate court. Moore's ex'x v. Ferguson, 2 Munf. 421; Sheppard's ex'or v. Starke, 3 Munf. 29. But it could not prejudice the sureties and certainly cannot render the decree fraudulent and void as to them. The form of the decree was the act of the court and not of the party or her counsel and there is nothing in the case upon which fraud in fact or in law can with any justice be imputed to either of these. If the decree were even erroneous as contended by the *273 counsel, this would not render it a nullity. As long as it remains unreversed full force and effect must be given to it as well against the sureties as the executor himself and it cannot be questioned in this collateral way.
I think none of the grounds of error assigned can be maintained: and I am of opinion to affirm the judgment.
The other judges concurred in the opinion of Lee, J.
Judgment affirmed.