ATIvTON, P.
On the 29th day of April 1858 the auditor of public accounts notified the plaintiff in error, James Monteith, as sheriff of Stafford county, and the other plaintiffs in error as his sureties, that instructions would be given to the attorney general to move against them for the balance of the land, property and free negro-taxes of 1857, due from James Monteith, sheriff of Stafford county; also for damages, &c.
The plaintiffs in error appeared, and objected to the legality of the motion, and moved to dismiss it: 1st, because it did not appear from the notice on what bond the motion was made; 2d, that if made on the bond executed on the 12th of January 1857, the said bond was illegally taken, because the same was not executed within the time limited by law for the taking thereof. The motion was overruled, an exception taken, and in the bill of exceptions the facts, as agreed upon the trial, were set out.
Prom these it appeared that the attorney general exhibited an account, which charged Monteith, sheriff of said county, "to balance of land, property, free 'xnegro and September license taxes of 1857, $7350 61, interest at 12 per cent, from 13th September 1858.” Also, an affidavit of service of the notice on all the plaintiffs in error. One of the parties to whom the notice was directed, was dead, as appeared from the affidavit. It further appeared, that James Monteith was elected sheriff of said county in May 1854, and executed his official bond on the 10th of July following. That on the 14th day of July 1856 he gave another bond, in pursuance of the act of March 15th, 1856, continuing the term of office to which he was elected in May 1854, until the 1st of January 1857; that in May 1856 he was re-elected sheiiff of said county for a regular term of two years, commencing the 1st of January 1857; and that no other than said bond of the 14th of July 1856 was given by him after his re-election in May 1856 until the 12th of January 1857, on which day he execiited the bond of that date, which was signed by the plaintiffs in error and the security since deceased. The condi^^n of this bond recites, that said *786 James Monteith hath been elected sheriff of the county of Stafford for the term of two years, commencing' from the 1st of January 1857. The bond appears to have been acknowledged in open court, and ordered to be recorded. The parties also agreed that there was a balance of land, property, free negro and license taxes for the year 1857, unpaid and due by said Mon-teith, amounting to the sum . of seven thousand three hundred and fifty dollars and sixty-one cents. It was further agreed, that there should be ' no formal pleadings, but that the plaintiffs in error might avail themselves of all legal defences to the commonwealth’s motion.
On these facts the court entered judgment, that the commonwealth should recover against the plaintiffs in error seven thousand three hundred and fifty dollars *and sixty-one cents, the balance of the land, property and free negro taxes of 1857, due from said Monteith, sheriff as aforesaid, with interest, damages and costs.
The first objection, that the notice did not show on what bond the motion was made, was properly overruled. The notice is of a motion against the sheriff and others, his sureties, for certain taxes due from the said sheriff for 1857. No particular bond is described, but it was incumbent on the commonwealth to show at the trial that the said sheriff, with the persons named as sureties, had duly executed a bond for the faithful discharge of the duties of his office for that year.
The main question upon this branch of the case is, whether the bond of the 12th of January 1857 was a valid obligation.
The constitution, art. vi, sec. 30, provides, that the voters of each county shall elect a sheriff, who shall hold office for the term of two years; and the 23d section of the same article directs that all officers, whether elected or appointed, shall continue to discharge the duties of their respective offices after their terms of service have expired, until their successors are qualified. And art. v, ‘Í 38, provides, that the manner of conducting elections and making returns of elections, of determining contested elections, and of filling vacancies in office in cases not specially provided for in the constitution, shall be prescribed by law. And the general assembly may declare the cases in which any office shall be deemed vacant, where no provision is made for that purpose in the constitution.
To carry out in part these constitutional regulations, the legislature, by an act passed April the 22d, 1852, Sess. Acts, p. 64, ch. 71, directed that the voters of each county should, on the fourth Thursday in May, elect a sheriff, whose term of office, by the 18th section of said act, was to commence on the first day of *July next succeeding the election, and to continue for two years. By the 7th section, the officer conducting the election at the court-house, within five days from the commencement of the election, was to examine the poll, ascertain the result, and declare the person to whom the greatest number of votes were given, to be elected. By the 8th section, the officer conducting the election is to make true return of the sheriff elected; which ' shall be handed to the clerk of the Count}- or Corporation court, to be filed in his office. The 9th section provides, that the return shall be subject to the enquiry, determination and judgment of the County court, upon complaint made in the mode designated of undue election or false return; prescribes how contested elections shall be proceeded in, and that the court, in judging of said elections, is to proceed on the merits thereof, and determine finals concerning the same, according to the constitution and laws. By the 10th section, the court is to proceed, ,at the first session after the complaint of an undue election or false return is made, to determine said contest without a jury, unless good cause be shown for a continuance. By the 14th section, whenever a vacancy shall occur in said office, the County court shall order a writ of election to supply the said vacancy. And by the 19th section, it is enacted that before entering upon the discharge of his duty, the person elected shall take the oaths of office prescribed by the Code, and give such official bond as is required of him; that he shall take such oaths and give such bond in the proper court within sixty days after his election; and if he fails so to do, his office shall be deemed vacant. But his qualification, unless he be elected to fill a vacancy, shall not be deemed to take effect before the first day of July next after his election.
The act of March 15th, 1856, changing the time at which the term of office shall commence, made no *alteration as to the time of the election or the period thereafter within which bond was to be given.'
In this case, the bond upon which the parties were notified not having been executed until the 12th of January 1857, more than sixty days after the election, a question arises whether there was then any authority to take it, or whether the obligors can be permitted to allege that the same was invalid. Upon the provisions of the constitution and laws referred to, the attorney general insists that until the County court has actually adjudged or determined that the title to the office of sheriff, derived from the election of the voters, has been forfeited by the failure to qualify and give the official bond, he is still, to all intents, in office, and may rightfully qualify; and if he does so, his title to the office cannot be questioned in any proceeding thereafter. The law in this respect adopts the terms of the constitution, which empowers the general assembly to declare the cases in which any office shall be deemed vacant; and there is much force in the argument that the word “deemed” here should be taken in the sense of adjudged or determined b}1' that authority which is to determine whether *787 tliere has been an undue election or false return, upon proper complaint made, and which is required to order a new writ of election when a vacancy occurs in the office. It can hardly be supposed that the legislature intended to make the omission to give bond within sixty days after the election, work an absolute forfeiture of the title in every supposable case. The title to the office is derived from the election by the voters. The declaration of the officer conducting the election and his certificate are merely evidences of the fact of an election, and do not affect the validity of the title conferred by such election. If the officer conducting the election, and whose duty it is, within five days from the commencement of the election, to examine the '"'poll, ascertain the result, and declare the person for whom the greatest number of votes have been given, to be duly elected, should neglect or refuse to perform this duty within the sixty days, his default should not operate to forfeit the title of the person elected to the office. So, if an election should be contested, the court may, for good cause shown, continue the controversy from term to term. If so continued, the controversy would generally continue beyond the sixty days. In such case, if the contest should be determined in favor of the party returned as elected, his omission to give the bond within sixty days after the election, would not, as it seems to me, forfeit his title. In these and perhaps other instances it would seem that justice to the party elected requires that the law should be so construed as to allow some extension of the time beyond the sixty days. The legislature, however, in the clause under consideration, has used this word “deemed” twice, and in the last instance, certainly in the sense of to look upon, regard, hold, take. The clause declares that if he fail to take the oaths and give the bond within sixty days after his election, his office shall be deemed vacant, but his qualification shall not be deemed to take effect before the 1st of July next after the election, ijo adjudication or determination was contemplated by the use of the word in the last member of the sentence.
The act passed March 30th, 1858, Sess. Acts, p. 17, ch. 20, entitled an act providing for general elections, &c., uses the same terms, and in reference to other officers. The 56th section thereof, for instance, provides that the office of judge shall be deemed vacant not only when he dies, resigns, or is removed from office, but also when he fails to qualify within thirty days next after he receives his commission ; thus seeming to treat the failure to qualify within the thirty days, as creating a vacancy to the same extent as when *the vacancy is caused by death, resignation or removal from office. The succeeding section provides, that when there shall be such vacancy in the office, the governor shall make known the fact, by proclamation, within ten days after the fact shall come to his knowledge, &c. — the words “such vacancy” referring to a vacancy produced by any of the causes enumerated in the preceding section.
Under these various provisions of the constitution and laws, questions of great importance may arise as to the proper construction of this term, as used in the constitution, and adopted in the laws to carry the constitution into effect. The case under consideration, it seems to me, may be correctly decided on other grounds upon which I prefer to place it, as it was argued before the vacancy on the bench was filled.
Was not Monteith, after he gave bond and entered upon the discharge of the duties of the office, sheriff de facto? If he were not in all respects an officer de jure, because of the failure to qualify and give the bond in the time prescribed, was he a mere usurper, undertaking to act without any pretence or color of right? This cannot be maintained upon the facts in this record. He had been regularly elected; from that election he derived his title to the office ; no commission was necessary to perfect it; the law required none ; and in practice no commission issues. The subsequent steps of the officer conducting1 the election are only intended to authenticate the fact of such election, and the qualification and bond do not confer the office, but are preliminaries to his entering upon the discharge of the duties of the office to which he has been elected. Asserting such title to the office, he executed and acknowledged the bond required by law, before the tribunal authorized to lake the official bond of sheriffs. . The condition of the bond so executed recites that he hath been elected sheriff of the '"'county of Stafford for the term of two years, commencing from the 1st of January 1857; and binds him to the faithful discharge of the duties of his office aforesaid, according to law: Thus showing that he claimed to act under the title conferred on him by election, and gave bond to execute the duties of the office to which he asserted a legal right.
It was held in the case of The King v. Lisle, Andrews’ R. 164 (S. C. 2 Stra. R. 1090), that in order to constitute a mayor de facto, it is necessary that there should be some color of an election. In The Town of Plymouth v. Painter, 17 Conn. R. 585, a person eligible to the office of grand juror, was in October duly chosen a grand juror for the following year. He refused to take the oath prescribed, and was fined according to law for such refusal. He paid the fine, and in the month of May afterwards took the oath and exercised the functions of a grand juror, by making a presentment and prosecuting it. In a suit between third parties, in which the validity of his official acts came in question, it was held that he was an officer de facto, and his acts as such were valid. It was insisted there, if a person chosen does not accept and qualify, the office becomes vacant; but the court held, that although it might not be easy in all cases to determine what ought to be con *788 sidered as constituting a colorable right to an office, so as to ascertain whether one is a mere usurper, there was a fair color of right in the person acting as grand juror to exercise that office, whether he was legally entitled or not. He was plainly more than a mere usurper; he was legally appointed; was eligible, and claiming a right to act under his appointment, took the oath prescribed. 1111656, if nothing had intervened, would have been sufficient to confer a complete title to the office; and even if his previous refusal to take the oath disqualified him from doing so after-wards, this effect was not *'so palpable as to deprive him of a fair color of right to exercise the office. There was an observance of all the legal forms, and this clearly constituted a colorable title or apparent right.
In the case of The People v. Collins, 7 John. R. 549, a person was duly elected a commissioner of the highway for the ensuing year. The law provided that the commissioner, before he entered on the discharge of the duties of his office, and Within fifteen da37s after his election, should take and subscribe the oath of office before some justice of the peace, who, within eight days thereafter, should certify the oath and deliver it to the town clerk; and that if he shall not take and subscribe such oath and deliver such certificate, such neglect shall be deemed a refusal to serve in such office; and the town may proceed to choose another. The commissioner chosen had not taken the oath, and filed the certificate according to the act. The commissioner having laid out a survey of a road, the town clerk refused to record it. Upon an application for a mandamus to compel him to record the survey, it was argued that if the person elected does not take the oath within fifteen days, it is a refusal to accept, and the office becomes vacant, so that a new election may be made, and that no quo warranto was necessary, because the act considers the office as vacant, and provides for filling it. But the court held, that if he acted without qualifying, he was liable to a penalty, or the town might choose new commissioners; but if the town did not, the subsequent acts were valid, so far as the rights of third persons and the public were concerned. He was commissioner de facto, since he came to the office by color of title.
In Fowler v. Beebee, 9 Mass. R. 231, it was objected that the sheriff whose deputy executed the writ, was not sheriff de jure, he having been appointed and commissioned some months before the law erecting the 'x'county for which he was appointed, went, into operation. The plea was overruled, because he was sheriff de facto, and his acts and those of his deputies were valid as to third persons. Upon an information againt the same officers, it was decided in 10 Mass. R. 290, that their appointments were made without constitutional and legal authority.
The principle of these and the like cases, say the court in Wilcox v. Smith, 5 Wend. R. 231, is this, that a person coming iuto office by color of election or appointment, is an officer de facto, although it be conceded that his election or appointment ivas invalid; or I may add, although by neglecting or refusing to qualify, the law treats the office as so far vacant as to provide for filling it by á new appointment.
And this is a sufficient answer to the argument, that if a sheriff coming into office under color of an illegal election, is to be treated as an officer de facto, a mere stranger, if permitted to qualify, might intrude himself into the office. Such a person would be a mere usurper, and his acts void. There being but one mode of acquiring the title to the office, to wit, by election, where it appeared that no such claim of title is preferred, the act of qualification would confer no right, for no title is thereby acquired ; and the court or tribunal permitting it would be acting not under authority of law, but without law, and the act would be not voidable, but wholly void.
The provision in the constitution, that officers shall continue to discharge 'the duties of their respective offices until their successors are qualified, does not affect the question in the present case. He had been elected sheriff in 1854, and continued in office, by virtue of said election, or by executing a new bond, as provided for by the act of March 15th,. 1856, postponing the commencement of the term from the 1st of July to the 1st of January next after the election. *By asserting his title to office under his last election, and giving bond, he admitted' he was not in office under his previous election. There could be but one sheriff, and by assuming office under color of the last election, the office was full, and filled by him, either de jure or de facto, under his last election. Nor, as it seems to me, would the case have been varied, if a stranger had preceded him. The return of the election is to be made to the clerk of the county, to be filed in his office. The returns of the election are subject to the enquiry, determination and judgment of the County court, where there is a complaint made in the mode prescribed. It hears and determines contested elections; it passes upon the sufficiency of the sureties offered; it receives and orders to be recorded the official bond. It must ascertain whether a vacancy exists before it can order a wi'it of election to supply it. Even if the law7 declaring that the office should be deemed vacant upon a failure to give bond within sixty days, be mandato^7 and not directory, and it was the duty of the court to have ordered a new writ, still it was not done. On the contrary, they recognized the title preferred; and so recognizing it, though it be conceded thej7 erred, they were acting within the scope of their authority7, and their act is not void. It must be respected; and the person so admitted into office, upon title claimed to be derived from regular election, and, as in this case, admitted to have been asserted under such election, can only be ousted by *789 a quo -warranto, the proper proceeding- to try the validity of the title to an office. Town of Plymouth v. Painter, 17 Conn. R. 585. It would be oppressive on the preceding sheriff and his sureties, if they were required to ascertain at their peril whether his successor had been regularly inducted into office by the officers or courts to whom this duty was confided by law. The duty of the preceding sheriff is at an end when a successor ^claiming to be duly elected is inducted into the office, through the agency of the proper officers and tribunals charged with this duty.
In Harris v. Jays, Cro. Eliz. 699, it was conceded by the court, that if one being created bishop, the former bishop not being-deprived or removed, admits one to a benefice, the act is good and not avoidable, for that the law favors one in a reputed authority. There was in fact a bishop de jure, yet respect was paid to the act of another, who was inducted into office claiming under the color of a proper appointment. 16 Vin. Abr. tit. Offices, G. 4; O’Brian v. Knivan, Cro. Jac. 552. Treating him as sheriff de facto, his acts are valid as respects the. rights of third persons who have an interest in them, and as concerns 1he public in order to prevent a failure of justice. Such is the case of public officers, who are such de facto, acting under color of office, by an election not strictly legal, or without having qualified themselves by the requisite tests, or by holding over after the period prescribed for a new appointment, as in case of sheriffs, constables, &c. 2 Kent 345 (295 mar.), and the cases before referred to: and Jones v. Gibson, 1 N. Hamp. S. 266; The Margate Pier v. Hannam, 5 Eng. C. L. R. 278.
If then the sheriff is in office as sheriff de facto, it is not for him to deny the validity of his title, or to say that he is not sheriff de jure, or that the court had no authority to take his bond. When the court recognized the validity of his title, whether they erred or not, they were acting within their jurisdiction in requiring the bond; for the law makes it the duty of the court to take such bond from the sheriffs eleqted. The title by election so recognized subsists until the party is ousted; and while it does exist, the court may rightfully require the bond. Whenever it is conceded that he is sheriff de facto, it is also conceded that the ^office is full. He cannot deny that he is sheriff de jure; and conceding him to be in office, the law makes it the duty of the court to require bond. In this case, there is no question that the bond is in proper form, taken by the proper tribunal, and shows that it was given by him as sheriff for a specified term for which he was elected. It would be most unjust to the public, and to individuals who must rely on this bond as their security for the due performance of the duties of his office, to permit him now to controvert the truth of his own assertions. Nor can I perceive any better ground upon which the securities can stand. If the bond is valid as to him, it is equally so as to them. The fact of election is proved by the recital in the condition, and admitted in the agreement of facts. And the recital shows the bond was taken and received by virtue of such title; and this, it seems to me, they are estopped from denying, even if the agreement of facts did not show the election.
The cases referred to, and relied upon in the argument, do not establish any principle at variance with the proposition above maintained.
In the United States v. Kirkpatrick. 9 Wheat. R. 720, the validity of the bond was not in question. The law authorized the president, in the recess of the senate, to make appointments, by granting commissions which should expire at the end of the next session. Bond with surety was given under this commission. Afterwards, a new appointment, by and with the consent of the senate, was made. The court held that the two commissions could not be considered as one continuing appointment; the acceptance of the last commission was a virtual superseding and surrender of the former; and that the liability of the sureties was confined to the duration of the first commission.
In the case under consideration, the sureties are liable *for the discharge of the duties of the office for the term for which the bond recites he was elected, and thereafter until a successor qualifies.
In Branch v. Commonwealth, 2 Call 570, the condition of the bond was for the collection of taxes imposed by an act of assembly recited in the condition of the bond. This law had expired. No taxes were collectible under it, and the liability of the sureties could not be extended beyond their undertaking, to taxes collected under a subsequent law. No question as to the validity of the bond or the effect of a recital as estopping the parties, was decided. The sureties stood upon the letter of the bond.
In Stuart v. Lee, governor, 3 Call 421, the law directed that the bond should be payable to fhe justices, and that the penalty should be one thousand pounds. The bond was taken, paj'able to the governor, in the penalty of ten thousand pounds. The suit was brought in the name of the governor at the relation of the party injured. It was a suit under an act of assembly authorized to be brought on certain bonds given under statutes. The court held, that as the statute required a bond in the penalty of one thousand pounds, payable to the justices, this was not such a bond as the act required; and being sued on as a bond taken under the act, the action could not be maintained.
In the case under consideration, the bond is taken in a proper penalty, and payable to the proper party, and so conforms to the law.
In The Commonwealth v. Jackson’s ex’or, 1 Heigh 485, it appeared that there was no law authorizing the 'sergeant of the Hustings court of Williamsburg to collect public *790 taxes, or the court to appoint a collector or take a bond from him. The court held, that such bond was not valid and obligatory on the surety. No reasons are assigned; but the bond was taken not only without authority of law, but against the policy of *law; it was an unauthorized interference of the court with the collection of public revenue; a duty confided by law to officers designated by the law.
In our case, the County court is the tribunal to which the law confides the duty of taking the bond, and the bond is in furtherance of public policy.
The cases of Frazier v. Frazier’s ex’ors, 2 Leigh 642, and Roberts v. Colvin, 3 Gratt. 358, merely decide that the parties could not be charged beyond the stipulations of their contract. The bonds did not conform to law, and did not extend to the liability asserted.
In none of these cases did the question of estoppel arise.
In the case of Cutler v. Dickinson, 8 Pick. R. 386, an administration bond given to a judge of probate, was offered in evidence, and the court held that the obligors were estopped by the recital in the bond to deny the appointment of the administrator; and in Allen v. Luckett, 3 J. J. Marsh. R. 165; Stockton v. Turner, 7 Id. 192; Kellar v. Beeler, 4 Id. 655; the parties were estopped from denying that there was such an injunction, judgment or decree as these bonds recited, although in all these cases the matter recited ought regularly to appear of record ; and in Franklin’s adm’r v. Depriest, 13 Gratt. 257, the official bond of an executor was made payable to four justices, one of whom was not a member of the court at the time. It was held that the sureties were estopped from averring that he was not a member of the court, as by their bond they acknowledged that the four persons to whom it was made payable, were justices of the County court then sitting.
Upon these authorities, it seems to .me that the sureties as well as the principal would be estopped from denying the title by which the sherifE claimed his office. They acknowledged in the condition that he had been elected sherifE for said county for the term of *two years, commencing from the 1st of January 1857, and bound themselves for his faithful discharge of the duties of his office aforesaid: the office of course to which he then had title by virtue of his election for a term of two years just commencing.
Upon the whole, I regard the bond as valid, and that the motion to dismiss was properly overruled.
But it seems to me there is error growing out of the variance between the notice and judgment and the proof, which must lead to a reversal, and a remanding of the case for a new trial. It was agreed that there should be no formal ^Readings, but that the defendants might' avail themselves of all legal defences to the motion. The parties agreed the facts, and the question was referred to the court whether any, and if any, what judg'ment should be rendered. The parties were notified that a motion would be made against them for the balance of the land, property and free negro taxes of 1857, &c., without specifying any amount. The account filed shows a balance of land, property', free negro and September license taxes of 1857, amounting to seven thousand three hundred and fifty dollars and sixty-one cents. By the facts agreed, it appears that there was a balance of land, property, free negro and license taxes for the year 1857, unpaid and due by the sheriff, amounting to seven thousand three hundred and fifty dollars and sixty-one cents; and the court rendered judgment for that sum, the balance of the land, property and free negro taxes of 1857, due from said sheriff, with interest, damages and costs. By the facts agreed, it would seem that the balance was made up of license taxes as well as of land, property and free negro taxes; but there is nothing to show what proportion of such balance was license taxes. It is most likely, as was suggested in argument, that the payments made, when applied to the license taxes, discharged them, and that there may be *that balance of the other taxes due for the year 1857; and that if the subject had been adverted to on the trial, it could have been shown that such was the state of the case. There is, however, nothing in the record to enable the court to correct the error. As the notice did not claim any license taxes, and the judgment is pursuant thereto, it would not be a bar to another proceeding for the license taxes, and the facts agreed show a fatal variance between the notice and judgment and the proof. I think on this account the judgment must be reversed, and the cause remanded for a new trial.
The other judges concurred in the opinion of Allen, P.
Judgment reversed.