𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

BARNES V. TRAFTON.

SAME V BERRY.

JUNE 11TH, 1885.

1. PRACTICE IN EQUITY—*Guardian and sureties.*—In suit against guardian and his sureties by ward, a joint decree may at once be rendered against them on their official bond, without exhausting the guardian before going on his sureties.

2. EQUITABLE JURISDICTION AND RELIEF—*Wife's land—Joint sale—Trust.* Where wife joins with husband in conveying her land on condition that proceeds be applied to payment of a debt binding her children's land, a trust is thereby created, which a court of equity will enforce against husband, though the bonds for said proceeds be made payable to him.

Heard at Richmond and decided at Wytheville.

Appeal from two decrees of the circuit court of Princess Anne county, rendered in the cause of Mary S. Berry, infant, by her next friend, against William A. Barnes, guardian, and his sureties on his official bond,—and in the cause of Isaac B. Berry, infant, by his next friend, against the same. The first cause was revived in the name of John W. Trafton and wife as complainants, upon the intermarriage of Mary S. Berry with him. The object of the suits was to surcharge the accounts of the guardian, and to recover the amounts respectively due his wards. The mother of these wards, was the wife first of

their father, Zebulon Berry, and some years after his decease, of Barnes, their guardian.

There remaining a debt of her first husband, binding the lands descended from him upon the said wards, and their mother owning a tract of land in North Carolina, consented to join in a conveyance of said land with her husband, the said Barnes, on condition that the proceeds be applied to extinguish that debt and relieve her children's lands. The bonds for the proceeds were taken payable to Barnes, but remained at the time of the decrees complained of, in his hands. The cause was referred to a master to take, settle and report the guardian's accounts. The account was taken, and the report showed that after allowing the guardian reasonable compensation for the board and clothing of his wards, and credits for proper disbursements for repairs and improvements on the wards' lands, and for payments made on the said debt, and charging him with the rents of their said lands and the proceeds of the said North Carolina lands, their remained due to Mrs. Trafton the sum of $583.57, and to Isaac B. Berry the sum of $495.86, with interest on both sums from March 2, 1876. There were exceptions to this report. The circuit court allowed the guardian two credits, which reduced the amount due to Mrs. Trafton to $466.21, with interest as before, and overruled the exceptions, confirmed the report, and gave the complainants decrees for the said amounts and interest respectively, with costs. From these decrees, Barnes, guardian, and his surety appealed to this court.

Opinion states the case.

*Walke & Old*, for the appellants.

*Starke & Martin*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

These were suits in equity in the circuit court of Princess

Anne county, brought in February, 1876. The first named suit was originally brought in the name of Mary S. Berry, an infant, by T. S. Berry, her next friend, against her gaurdian, William A. Barnes, and his sureties, and pending the suit the said Mary S. Berry having become of age and intermarried with John W. Trafton, the suit was thereafter, by order of court prosecuted in the name of said Trafton and wife. The other suit was brought and prosecuted in the name of Isaac B. Berry, an infant, by T. S. Berry, his next friend, against the same parties. These two plaintiffs are brother and sister, and the wards of said William A. Barnes. The object of each suit was to surcharge and falsify the *ex parte* settlements of said William A. Barnes, as guardian of said plaintiffs, and to recover the amounts respectively due to them.

Except in one not very material respect, which will hereafter be referred to, the questions arising in the two cases are identical, and the two cases, with the exception referred to, will be treated by reference to the first named case of *Barnes et al.* v. *Trafton and wife.*

The facts are these: Zebulon Berry died in the county of Princess Anne, in February, or March, 1862, leaving a widow and three infant children, Mary S., Isaac B., and Jane, the latter having died in the year 1865, leaving the said Mary S., and Isaac B., the only surviving children, and they are the afore-mentioned original plaintiffs and appellees here.

At the time of his death, Zebulon Berry was the owner of a farm in Princess Anne county, which descended to his said children, subject to the widow's dower, which, however, was not assigned to her until 1872, some ten years after her husband's death. Mrs. Berry qualified as the administratrix of her husband, who left also a considerable personal estate, from the proceeds of which there went into the hands of Mrs. Berry, as administratrix, the sum of $2,219.99.

From the death of her husband until the death of her youngest child, Jane, in 1865, Mrs. Berry lived on the farm of

which her husband died siezed, with her children, and with the two surviving children continued so to live, until December, 1867, when she intermarried with the said William A. Barnes, and for several years after the said marriage, Mary S., and Isaac B., lived with said Barnes and their mother, on a farm in said county owned by Barnes. At the time of the marriage of their mother with said Barnes, the children, Isaac B., and Mary S. Berry, were respectfully eleven and nine years old.

On the 2d day of March, 1868, William A. Barnes was appointed by the county court of Princess Anne, and qualified as the guardian of said Mary S. and Isaac B. Berry. In May of the same year, John H. Dey, a commissioner of said county court, reported thereto what purported to be a settlement of the account of William A. Barnes, as guardian of Mary S. Berry, for the period from December, 1865, to March 2d, 1868, the day of his appointment as guardian, the so-called settlement covering a period, for no part of which was Barnes really the guardian of said children. By this clearly unauthorized settlement, which was, without authority of law, confirmed by the said county court, a large portion of the principal of Mary S. Berry's interest in the personal estate of her father, Zebulon Berry, was consumed. This result was brought about in this way: By a settlement in March, 1863, of the accounts of Mary Ann Berry, the widow and administratrix of Zebulon Berry, there was due from her, as administratrix, to said estate, the sum of $2219.99, as of March 7th, 1863. This appears to have been the only settlement of her accounts as administratrix. The youngest child, Jane Berry, having died in tender years, after this settlement, but before the marriage of Mrs. Berry with the appellant, Wm. A. Barnes, the two surviving children, Isaac B. and Mary S. Berry, would naturally seem to be the only remaining distributees; the fair inference being, that the widow, Mrs. Berry, took her part of the personalty as authorized by law. But of this the record contains no positive information. In fact, in the absence of any appraisement or sale bill, or any direct evidence upon the sub-

ject, we are permitted to infer that Mrs. Berry, the widow, did not receive her share independent of said balance found due from her to the estate, and that she was entitled to one-third thereof; a view which all the parties to the controversy seem to acquiesce in.

Thus, the amount of $2219.99, stood for distribution between the widow and two surviving children of Zebulon Berry, subject to any debts due from the estate; and there were some debts remaining unpaid, which will hereafter be referred to.

The appellant, Wm. A. Barnes, on his marriage (or very soon thereafter) with the widow of Zebulon Berry, became the regularly appointed guardian of said Berry's children, duly qualified, and as such, entered into bond before said court in the penalty of $2000, with Whitehurst Barnes and Daniel Dozier as sureties, the last named of said sureties having departed this life, and James E. Bell being his personal representative. Said Barnes was appointed guardian on the 2d day of March, 1868; in a very short time thereafter he procured from a commissioner of the court an <i>ex parte</i> settlement of what purports to be an account of the transactions of said Barnes as guardian of said children from March 20th, 1865, to March 2d, 1868, all this period being prior to his appointment as guardian, and for no part of which had he any control over either the persons or estates of these wards. But, recognizing that on her marriage with him, Mrs. Berry's powers as administratix ceased, and that he (Barnes) became charged with her fiduciary liabilities, he goes before a commissioner of the court and succeeds in having a settlement stated and reported, in which for the period, all of which is prior to his authority as guardian, he has charged against this ward (Mary S. Berry) for and on account of disbursements to her charge, by him as her guardian, amounting to $544.71. Then he ascertains (exactly how, does not appear) this ward's interest to be $995.32, from which, after subtracting said aggregate of charges, $544.71, there only remained due this ward the sum (as per this mode of accounting)

of $450.61. By thus assuming to be guardian for a period when he was not, and by the mode of accounting just stated, Wm. A. Barnes is relieved of the larger portion of his liability, even before he had the right to open an account with his wards. On the same basis, but subsequent to his appointment as guardian, Wm. A. Barnes had two other settlements before a commissioner of the court, one on the 24th of September, 1873, and the other on the 3d of June, 1875, by the last of which we have this result—this ward's interest in the personalty swept away, and she made to appear in debt to her guardian and stepfather in the sum of $108.22, as of March 2d, 1875. These settlements were in the usual way confirmed by the court without exceptions thereto.

The only outstanding liability of the estate was a debt of $500 (known in the record as the Grundy debt), which, with interest accrued, had well nigh doubled when discharged. This debt, Mrs. Berry (then Mrs. Barnes), was anxious to discharge out of her own means, and to that extent preserve the estate of her first husband (Berry) to her children by him, to-wit, the said Isaac B. and Mary S. Berry. Mrs. Barnes, either before or after her marriage with William A. Barnes (it is not material which), had acquired by inheritance from a relative certain real estate in the state of North Carolina. She joined with her husband in the sale and conveyance of certain of the North Carolina lands to W. S. Berry, at the price of $700, with the agreement and understanding that the proceeds should be applied to said Grundy debt, and to that extent preserve the estate of her Berry children. The purchase money bonds were taken by Barnes, payable to himself. Barnes, it seems, had, on first of December, 1869, out of moneys belonging to the estate, paid $500 on the Grundy debt; and later, Barnes either turned over certain of the notes for the North Carolina land, or other notes in lieu thereof, amounting to about $450, in payment of the balance due on said Grundy debt. This transaction was negotiated by T. S. Berry, who thus lifted the Grundy note and de-

livered it to Barnes endorsed, "paid in full by W. A. Barnes, adm'r *d. b. n.* of Zebulon Berry, dec'd." In the second *ex parte* settlement above referred to, that of September 24th, 1873, and the first after Barnes really became guardian, this ward, Mary S. Berry, is charged, as of December 4th, 1869, with her third of payment then made on Grundy debt, $100. There is a discrepancy in dates and amounts, and the guardian claiming to have paid $500 on this debt, December 1st, 1869, while in the *ex parte* settlement the ward is charged as of December 4th of same year with only $100, her third of payment then made; and there is no other charge against the ward on account of any payment made by guardian in December, 1869, nor is it pretended that the guardian, at or about that time, made any other than the alleged $500 payment on December 1st, 1869. Then, in said account as of March 1st, 1872, this ward is charged for her third of balance then paid on Grundy debt $155.40. But nowhere are these wards credited with the proceeds of the North Carolina land, as intended by their mother, Mrs. Barnes, in making sale of same.

In this state of things Mary S. Berry, by her next friend, Tolman S. Berry, filed her bill against William A. Barnes, her guardian, and Whitehurst Barnes, his surety, and James E. Bell, the personal representative of Daniel Dozier, deceased, who was the other surety, setting forth substantially the facts as above, alleging specifically matter of surcharge and falsification going to the entire first *ex parte* settlement, covering the period when William A. Barnes was not her guardian, and extending to nearly every item in said two subsequent settlements, the bill charging that the same were false, fraudulent and extortionate.

William A. Barnes answered. Neither of the other defendants, (on whom process was duly served), appeared or answered, and the bill was taken for confessed as to them.

William A. Barnes, by his answer, after setting forth sundry matters wholly irrelevant to the real questions at issue, ad-

mits that he went before the commissioner and had said *ex parte* settlements (A. 1), but denies that the same is false, fraudulent or extortionate in any particular; and insists that the same (as well as the two subsequent settlements, resulting in said balance in his favor), having been confirmed by the court, are valid and binding.

The cause having been matured, an account of the guardianship transactions of William A. Barnes was ordered, which account was accordingly taken and reported by a commissioner of the court, John J. Woodhouse, the commissioner taking and returning with his report a large mass of depositions as the basis thereof, all of which depositions were taken under the eye of counsel on both sides, and every point contested with marked pertinacity. The commissioner, guided by the evidence, reports a balance due this ward, (Mary S. Berry), as of March 2d, 1876, of $583.57. In directing this account the decree expressly required said guardian to lay all his vouchers before the commissioner. In this respect, as well as to the means by which the commissioner arrived at the result reported by him, the commissioner says: " That, as said Wm. A. Barnes failed to lay before him his vouchers, he had to be governed solely by the accounts which had been rendered by the said Barnes before the county court, and the depositions taken in the cause. In the account made up by Com'r Dey, on the 13th day of May, 1868, (a copy of which is herewith filed, marked No. 1,) on the credit side of said account, the amount of said account of $961.99, is an error, it should have been $854.56. The items for rent for the years 1863, 4, 5, 6 and 7, your commissioner considered too low. He also allowed the ward credit for rent for the year 1862, because the sale of the chattel property of Zebulon Berry, dec'd, took place in the month of March of that year, and the ward should have been allowed her share of the rent for that year. On the debit side of said account the item of $10.12, paid Jno. P. Woodhouse and Dr. Burky, and the item of $48, ward's share of board and clothing for deceased

sister, Jane E., should have been charged one-third instead of one-half, and the board should only have been charged for 1864, and at $3 per month. The item of $288, for board and clothing furnished ward, should have been $180. See memorandum made by Mrs. Barnes, formerly Mrs. Berry, and filed with the said Wm. A. Barnes' deposition.

"In account marked No. 2, the items of $8.50, $10.08 and $13.58, for ditching, your commissioner is satisfied from the deposition of Andrew Laud, a witness for the defendant, taken as to the length and width of the ditches on the Berry farm, that the commissioner made an error by charging the ward one-half instead of one-third of the whole amount. The item of $43.50, for cutting large ditch, your commissioner considered also to be an error, the mistake being the same as the items for ditching (see deposition of Wm. A. Dowly, and copy of agreement between Z. Berry and others). The item of $100, December 4th, 1869, and the item of $155.40, March 1st, 1872, paid C. W. Grundy, your commissioner rejected, because the evidence shows that the said indebtedness was paid from the proceeds of the sale of the lands of Mrs. Barnes, formerly Mrs. Berry, with the express understanding that the amounts should not be charged against her Berry children, her object as stated by her, being to save the Berry land for them."

" On the credit side of said account, the amount of $25.50, for rent of 1872, is an error, and had it been stated correctly, your commissioner is of opinion that $25 would be too small. It appears from the depositions, that in the fall of 1871, the said Wm. A. Barnes, as guardian of the said Mary S. Berry, and her brother, Isaac B. Berry, put up before the court-house of this county, the Berry farm for rent for the year 1872; at said renting there were heavy restrictions to be complied with by the rentor, and the farm was knocked down to Andrew Laud, who, it appears, bid it off for Mr. Barnes, the guardian, at the price of $50; the said restrictions were not complied with, and the farm was held by said Barnes at the same price for the years

1873 and 1874; and as the said farm rented for $100 the next time it was put up, your commissioner considered that the ward should have her share of the rent for said years at the rate of $100 per year."

"In account marked No. 3, on the debit side of said account, the items of $5.64 and $8.47, for taxes; the item of $6.97, for timber and nails; the item of $9.25, for ditching; the item of $3, paid commissioners to lay off land; the item of $14.17, for ditching; the item of $6.66, for taxes; and the item of $1.24 paid clerk Edwards, are errors, they should have been charged one-third, instead of one-half."

Thus, in the language of the commissioner himself, we have the result arrived at, and his reasons therefor, based on the evidence taken before him and returned with his report; the commissioner throughout referring to the errors in the *ex parte* settlement and correcting them, as well against as in favor of the guardian; his disallowance of improper charges against said ward, and his allowance to her of larger rents than had been allowed in said *ex parte* settlements.

To this report of the commissioner, the defendant, Barnes, by counsel, endorsed thereon several exceptions, all of them voluminous, and in the main, more in the character of arguments to show why the commissioner should not have departed from the *ex parte* settlement, than exceptions proper.

At the hearing, the circuit court overruled all of said exceptions, but allowed two credits, with interest thereon, which had not been allowed by commissioner Woodhouse, the result of which was to reduce the balance in favor of this ward from $583.57 to $466.21, as of the 2d day of March, 1876, and so modified, the report was confirmed, and a decree entered for said sum of $466.21, with interest from 2 March, 1876, against said Wm. A. Barnes and his surety, Whitehurst Barnes, and the defendant, James E. Bell, the personal representative of Daniel Dozier, the deceased surety of said Barnes, out of any assets of his intestate in his hands, and costs.

From this decree, Wm. A. Barnes, and his surety, White-
hurst Barnes, obtained an appeal to this court; and while sep-
arate decrees were rendered in the two suits, (in the suit of
Isaac B. Berry against the same parties, the decree being for
$495.86, with interest from the 2d of March, 1876) the same
questions are raised by the pleadings, and both cases turn upon
the same evidence.

The appellants' first assignment of error is, that the decree
is against Wm. A. Barnes, the principal, Whitehurst Barnes,
his surety, and James E. Bell, personal representative of Daniel
Dozier, the deceased surety; whereas it is insisted, the decree
should have been only against Wm. A. Barnes, with recourse
over against the sureties, in case their principal did not pay the
money as directed. For this proposition counsel cite *Lacy* v.
*Stamper et al.* 27 Gratt. 42, but admit, that in that case the
court made an exception to the general rule. It must be re-
marked, however, that the case did not sustain the view taken
by counsel. There is nothing in the objection. There is no
good reason why a person having a valid claim against a guard-
ian and his sureties for a breach of the condition of the bond
of the principal, for which principal and surety are alike ex-
pressly bound, should be required to make two bites at one
cherry, or possibly a fruitless hunt, first after the principal, and
then be turned round to pursue the surety, when the ends of
justice can be better attained, and at less expense, by going at
once after all, according to the condition of the bond. In
*Franklin's adm'r* v. *Depriest*, 13 Gratt. 257, it is well said:
"Creditors upon legal demands sometimes may, and upon equi-
table demands must, come in the first instance into equity to
assert their claims, and may make the sureties parties, but they
may omit them, and after establishing their claims against the
executor and failing to get satisfaction by execution, may then
sue upon the official bond, and their failure to unite the sureties
in the chancery suit as defendants with the executor, will in no
manner affect the question as to when the cause of action upon

their official bond accrued." Certainly a decree is proper when against all properly chargeable with the plaintiff's claim.

As to the various exceptions to the commissioner's report, which are presented in detail under the appellant's second assignment of error, it is necessary to say but little after the very full statement of the case already given, including the reasons given by the commissioner for the result arrived at by him. It is sufficient to say that, except in the particulars in which the court below modified the report, the conclusions arrived at by the commissioner are fully borne out by the evidence in the cause; that the exceptions were all properly overruled, and the report, as modified by the court, properly confirmed. In fact, it would be a useless expenditure of time to examine in detail the various questions raised by the exceptions, inasmuch as it was practically conceded in argument by counsel for the appellant, that the only really contested questions are the allowances by commissioner Woodhouse to this ward for rent in excess of the allowances on that account in the *ex parte* settlement; the items of board and clothing as reduced by commissioner Woodhouse, and the charges in said *ex parte* settlement against the ward of $100, December the 4th, 1869, and $155.40, of March 1st, 1872, which last items the commissioner rejected because paid out of the proceeds of the sale of the North Carolina land, in the sale and conveyance of which Mrs. Barnes joined with her husband, Wm. A. Barnes, upon the express agreement that the estate of her first husband, Zebulon Berry, should to that extent be protected and preserved by the application of the proceeds of said North Carolina land to the said Grundy debt against the decedent's estate. The North Carolina land sold for $700. All of this should have been applied to the payment of said Grundy debt; in fact it was received by Wm. A. Barnes upon express trust to be so applied, and for the benefit of the surviving Berry children, Isaac B. and Mary S. Had it been so applied, less than $300 of the Grundy debt would have been left, by which, in equal portions, the interests of the two Berry

children in the personalty of their deceased father would have been released. This estimate is upon the supposition that the $100, December 4th, 1869, and $155.40, of March 1st, 1872, charged to each of the wards on account of payments on said Grundy debt, were the true amounts so paid. But if the item of $100 charged in the *ex parte* settlement was, as contended by Barnes, a mistake, and should have been one-third of the $500 payment, claimed by Barnes to have been made on the Grundy debt, December 1st, 1869, or $166.66, then this sum with the other item of $155.40, charged to each of the wards, Isaac B. and Mary S., making together the sum of $644.12 of the proceeds of the North Carolina lands thus accounted for; but leaving $55.88 of said proceeds, of which no account is given. So that in neither event have these wards received the benefit of the entire proceeds of the North Carolina land, as intended by their mother in making sale thereof. For Wm. A. Barnes it is contended, that his wife having joined with him in the sale and conveyance of this land, and the bonds having been taken payable to him, the proceeds became absolutely his. He cannot, as between the parties here in interest, thus evade his trust. It is true, if Mrs. Barnes had thus unguardedly parted with her land, and the bonds for the purchase money, taken as they were, had passed in good faith into the hands of innocent *bona fide* third parties, the case would have been different; but there is no such claim of any such party, and the decree in disallowing the charges by this guardian against his ward, for payments on the Grundy debt, out of the proceeds of the North Carolina land, is eminently proper.

In respect of the other contested items (1), of charges in the *ex parte* settlement for board and clothing, which were reduced by Commissioner Woodhouse, and the credits allowed ward for rent of farm, which were increased by the same commissioner, and confirmed by the court, it is only necessary to say, the report of the commissioner and the decrees complained of in these cases, respectively, are fully sustained and warranted by

the evidence in the causes, and we are of opinion, that so far there is no error in the decree in either case. This brings us to the consideration, very briefly, of the exceptional feature contended for by the appellants in the other case of ·

## BARNES ET AL. V. BERRY.

In this case, the balance found and decreed in favor of the ward, Isaac B. Berry, is $495.86, with interest from 2d of March, 1876, and costs. The additional objection insisted on in this case, and not made in the other case is, that Commissioner Woodhouse allowed appellant, Wm. A. Barnes, credit for only $12, for board and clothing of his ward, Isaac B. Berry, the appellee, for the year 1869, and only $25 on same account for the year 1870, after which no allowance was made by commissioner for board and clothing of ward. There is nothing in this contention. The evidence clearly shows that the ward for these years made quite a useful hand on the farm, and was much of the time during cropping season kept from school to work for the appellant, and was useful as a hand in plowing and hoeing. Under the peculiar circumstances, the allowances by the commissioner, for these years, was ample. Afterwards this ward, for part of the time, lived with and received from a relative in Camden, North Carolina, his board and clothes; and when living with his step-father thereafter, for reasons stated above, and by reason of his increased usefulness on the farm, it was proper that no allowance for board and clothes should be made. There is no error in this respect, nor is there any error in the decrees complained of in either case, certainly none of which the appellants can complain. We are therefore of opinion to affirm the decrees appealed from in both cases, with costs to the appellees, respectively; and both causes are remanded to the circuit court of Princess Anne, to be further proceeded with in accordance with the views herein expressed.

DECREES AFFIRMED.