# WHEELING.

GILMER'S ADM'R *v.* BAKER'S ADM'R *et al.*

Submitted September 19, 1883—Decided April 19, 1884.

(*GREEN, JUDGE, Absent.)

1. By the common law a person is a competent witness in a cause, if the proceedings therein cannot be used as evidence for him, although he may be interested in the *question* in issue and entertain wishes on the subject, and even have occasion to contest the same question in his own case in a *future* suit. This rule has not been affected or changed by our statute—Code, ch. 130 sec. 23—as to the competency of a person to testify against the representatives of a deceased person in relation to transactions had personally by the witness with such deceased person. (p. 83.)

2. A person jointly bound with a deceased person may testify in a suit, to which he is not a party, against the representatives of such deceased person in relation to transactions and conversations had personally with such deceased person, notwithstanding the fact that his testimony tends to throw the whole of such liability, *in that suit,* on the estate and sureties of such deceased person. (p. 84.)

3. An admission made by an administrator in a sworn answer to a bill filed against him and others to recover a fund in his hands, that he holds said fund as administrator, while he is in fact administrator and acting as such, is admissible as evidence against his sureties as administrator in another suit brought to recover said fund from him and his sureties, although the sureties were not parties to the suit in which said admission was made. (p. 86.)

4. A decree adjudicating adverse claims or rights, entered by the judge of a circuit court in vacation, by consent of the parties previously given in court and entered on the record, is erroneous and, perhaps, void ; *sed quære,* will so much of such decree, as constitutes simply an order or direction *ex parte* and administrative in its character, be held erroneous, if proper in itself, merely because it was thus entered in vacation? It is held not to be void. (p. 89.)

5. An insolvent fiduciary can not transfer his mere indebtedness in one capacity to himself in another capacity so as to exonerate his sureties in the one capacity and throw the burden upon his

sureties in the other. To make the transfer valid in such case it must consist of someting more than a naked liability; it must be substantial assets. (p. 92.)

6. But, if substantial assets be in the hands of the fiduciary, or he is solvent and able to pay over his indebtedness in the one capacity to himself in the other capacity, all that is required to make the transfer in such case, is for him to make his election to hold it in the latter capacity and manifest that election by some act, admission or declaration, and such election will bind his sureties on his bond given in the latter capacity. (p. 92.)

SNYDER, JUDGE, furnishes the following statement of the case:

In the year 1823, John Baker died testate in Jefferson county, leaving a widow and several children. By his will he directed his executors to sell his real estate and loan the proceeds during the minority of his children. On October 27, 1823, Baker Tapscott, a son in-law of the testator, had the will probated in said county and qualified as sole executor. Under the provisions of the will he, as executor, on January 13, 1831, sold a tract of about three hundred and thirty-three acres of land to Samuel Engle, and made him a deed for the same. A part of the purchase-money was paid down and for the residue the purchaser executed to the executor his bonds and conveyed the land to Henry Berry and Thos. Hite, trustees, to secure the same. In 1834, the said Engle died and soon after the Washington County Bank instituted a suit in the circuit court of said county against his administrator and heirs to subject his real estate to the payment of his debts. In this suit Tapscott filed his petition stating that he as executor of Baker held a first lien for upwards of six thousand dollars on the land sought to be sold, the same being the unpaid purchase-money secured by the trust-deed aforesaid. A decree was made in said suit, November 23, 1838, appointing Henry Berry and Andrew Hunter special commissioners to sell enough of said land to pay off said trust-debt, for one-third cash and the residue in one and two years. The commissioners made the sale which was duly confirmed by the court and the commissioners were directed to collect the deferred payments of the purchase-money.

Tapscott having died prior to this time, Henry Berry, on August 20, 1838, qualified as his administrator and gave bond as such with William Short and Jas. Hite as his sureties. On April 15, 1839, said Berry also qualified as administrator *de bonis non* with the will annexed of John Baker, deceased, and gave bond as such in the penalty of ten thousand dollars with said William Short and Joseph McMurran as his sureties.

It appears that Tapscott had, in 1835, transferred the greater part of the aforesaid debt, due to him as executor from Engle, to J. Hopkins & Bros. as collateral security for an individual debt due from him to them. In consequence of this a controversy arose between said Hopkins & Bros. and the administrator and children of Baker as to which was legally entitled to said Engle fund then in the hands of Berry and Hunter, special commissioners of the court as aforesaid. Thereupon W. Lisle Baker, one of said children, filed his bill in said court, charging therein that said transfer of said fund by Tapscott was fraudulent and void, and making said Hopkins & Bros., Henry Berry administrator, &c., and others defendants. Hopkins & Bros. and said Berry, administrator, answered said bill, the latter stating that at the time of said transfer the said Tapscott was largely indebted to the estate of said Baker, and that there were still unsatisfied debts against said estate. Subsequently, Berry as administrator of Tapscott filed a cross-bill, alleging that said transfer to Hopkins & Bros. was usurious and void, and that when it was made Tapscott was insolvent and much in arrear in his accounts as executor of his testator, John Baker, and praying that said transfer might be declared inoperative and the fund paid over to him as administrator of John Baker, deceased.

By a decree, entered February 20, 1845, in these several causes, heard together, in vacation, by consent of parties, the court decided that the said transfer of the Engle debt by Tapscott to Hopkins & Bros. was usurious and void and "by the consent of all parties (except J. Hopkins & Brothers), by their counsel, it adjudged, ordered and decreed that Henry Berry and Andrew Hunter, special commissioners in the case of the Washington County Bank against S. Engle's administrators and heirs, do pay to Henry Berry, adminis-

trator *de bonis non* with the will annexed of John Baker, deceased, the funds in their hands, the proceeds of the sale of the land of Samuel Engle, deceased, made by them, retaining the usual commissions. And it is further adjudged, ordered and decreed that the bill of W. Lisle Baker and the cross-bill of Baker Tapscott's administrator, be dismissed, but without costs against them."

On November 6, 1846, Johns Hopkins, surviving partner of J. Hopkins & Bros., by leave of the court filed his bill of review asking, upon grounds therein stated, to have the said decree of February 20, 1845, set aside. This bill was demurred to and answered by Henry Berry, administrator of John Baker and, on June 1, 1848, the court by its decree of that date dismissed the same without costs.

Johns Hopkins, on October 19, 1848, exhibited his bill against Henry Berry as administrator of Baker Tapscott and also as administrator of John Baker and obtained from the court thereon an injunction restraining "Andrew Hunter and Henry Berry, as commissioners of sale, from paying over to said Henry Berry in his character of administrator *de bonis non* with the will annexed of John Baker, deceased, the funds, as decreed by the court" in the aforesaid decree of February 20, 1845. By its decree of November 3, 1849, the court dissolved this injunction and dismissed the bill. From this decree the plaintiff, Johns Hopkins appealed and the cause was heard by the special court of appeals on March 4, 1856. That court reversed said decree of November 3, 1849, and ordered that the injunction awarded the appellant on the 19th day of October, 1848, be reinstated, but directed that "said injunction is not to have the effect of restraining the commissioners Hunter and Berry from paying over so much of the fund referred to in the appellant's bill as may be actually necessary to be paid over to the administrator *de bonis non* with the will annexed of John Baker to enable him to pay the outstanding debts against the estate of his testator."

A history of this litigation up to the date of the decree appealed from may be seen in the report of the case in 2 Pat. & H. p. 110

In March, 1853, while said cause was pending in the court

of appeals, Ann E. Gilmer, widow, one of the children and distributees of John Baker, deceased, instituted the present suit against Henry Berry, administrator of said Baker, Vincent M. Butler, administrator of William Short, deceased, Joseph McMurran and the distributees, other than the plaintiff, of said Baker, to have a settlement of the accounts of said Berry as administrator *de bonis non* with the will annexed of said Baker, and praying a distribution of the estate of Baker in the hands of said Berry as such administrator and for general relief.

An order was entered February 10, 1853, in vacation, which recites: "It appearing to the court that the fund arising from the sale made in this cause by Henry Berry and Andrew Hunter, special commissioners, has been colleted and loaned out separately, and that the order heretofore made directing the getting in of said fund for re-investment has not been fully complied with." The order then directs an account by a commissioner to ascertain by whom the several portions of said fund were received and its present condition. By an order made in this cause at the May term, 1853, Commissioner Cooke was directed to audit, state and report a settlement of the accounts of Henry Berry as administrator *de bonis non* of John Baker, deceased. The commissioner made and filed his report under the first order, showing that special commissioners, Hunter and Berry, had severally received certain portions of the fund referred to and he reported the condition of the portion received by Hunter, but made no reference to the portion received by Berry. This report was confirmed by decree of November 2, 1854, and the commissioner was ordered to execute the residue of the order of reference. The commissioner also made a report under the said order of the May term, 1853, which was not acted on by the court. About this time, June 4, 1856, the mandate of the appellate court in the suit of *Hopkins* v. *Baker's Adm'r* was filed in the circuit court, and by decree of that date the court permitted the plaintiff Hopkins to amend his bill in accordance with said mandate; and the report of Commissioner Cooke was re-committed to him to report the unpaid debts against the estate of John Baker, and the share of each distributee of said estate after

paying said debts. So far as the record here shows no further action was taken by the court of the claim or suit of Hopkins, but both seem to have been entirely abandoned.

In the report of Commissioner Cooke, dated May 28, 1857, he makes the following statement: "The amount in the hands of Henry Berry, special commissioner, is the following sums, viz:

| | | |
|---|---|---:|
| Cash received on 28th June, 1839............... ............... | | $1,262 65 |
| " " 26th June, 1840............................ | | 500 00 |
| " " 14th October, 1840........................ | | 414 50 |
| " " 8th July, 1841.............................. | | 150 00 . |
| " " 18th April, 1843............................ | | 835 00 |
| " " 16th July, 1845 ............................ | | 825 09 |

Mr. Berry has exhibited to me the following papers, viz :

| | |
|---|---:|
| Samuel D. Baker's receipt, without date, for......... | $   485 00 |
| Samuel D. Baker's receipt, dated April 14, 1848...... | 1,110 24 |
| William Lisle Baker's note, dated June 30, 1840..... | 400 00 |
| William Lisle Baker's note, dated June 28, 1841.... | 150 00 |

The notes are payable on demand.

This report was re-committed without confirmation. By decree of February 16, 1860, Commissioner Cooke was directed to report "what other funds there may be in these causes, and in whose hands, and by whom to be accounted for, and how the same should be disposed of."

Under this order the commissioner made a report dated October 19, 1860, in which he makes the same statement as to the sums in the hands of Berry, special commissioner, as that given in his report of May 28, 1857, before quoted, and by adding the interest on these sums to October 1, 1860, he makes the aggregate eight thousand five hundred dollars, which aggregate he apportions among the four distributees of John Baker, deceased, and then states an account between Berry as such commissioner and each of said distributees, showing that he, Berry, has largely overpaid one of them and that there is a balance of over five thousand dollars due from him as such commissioner to the others.

No action was taken on this report, nor any proceedings had in these causes, so far as the record discloses, from this time until April, 1869, when an order was made by consent making Sarah H. Berry administratrix of Henry Berry, deceased, a party in the place of said Henry Berry, and by consent the causes were re-committed to Commissioner Cooke

with directions the same as those contained in the aforesaid decree of February 16, 1860. The commissioner reported that after a laborious examination of the record and new vouchers, he finds "there are errors in his previous reports of the accounts of Henry Berry as administrator of John Baker, deceased, and as special commissioner, with the distributees of said Baker, and he recommends that a decree be pronounced ordering a reformation of the reports heretofore made in these causes according to the evidence in the particulars thus indicated." On November 11, 1869, an order was entered instructing the commissioner to reform and correct all errors of his former reports in said accounts; and by consent of parties these suits were revived in the name of T. W. Porterfield, sheriff of Jefferson county and as such administrator *de bonis non* of William Short, deceased.

Under the two last mentioned orders the commissioner made his report, dated March 22, 1870, in which, after stating the administration-account of Berry on the estate of Baker, showing certain balances due from him as such administrator to the distributees which appear in the decree of April 28, 1870, hereinafter given in full, he reports an account of Berry as special commissioner with the distributees of Baker. He states the "balance due from said Henry Berry to the heirs to be eight thousand five hundred dollars, with interest from October 1, 1860, which is to be divided between Ann E. Gilmer, Samuel D. Baker and W. Lisle Baker, two thousand eight hundred and and thirty-three dollars and thirty-seven cents each. I report that there is due of said fund to Ann. E. Gilmer the sum of two thousand eight hundred and thirty-three dollars and thirty-seven cents, none of which has been paid," and "a balance due to Samuel D. Baker of one thousand five hundred and thirty-nine dollars and forty-two cents." He makes no mention in his report of any balance due to W. Lisle Baker, yet, in his statement of the account between this distributee and Berry as commissioner, filed with his report, it appears that W. Lisle Baker's share of the fund, which the commissioner makes two thousand eight hundred and thirty-three dollars and thirty-seven cents, is reduced by credits to one thousand six hundred and twenty-two dollars and eighteen cents. The

report shows that the eight thousand five hundred dollars, taken as the basis of the aforesaid statement, is taken from his former report of October 19, 1860. In reference to this report the court entered the following decree which is given in full as its effect is one of the material matters to be decided by this Court:

"These causes came on to be heard this 28th day of April, 1870, upon the papers previously read in the cause, and the report of Edward E. Cooke, returned to the clerk's office on the 22d day of March, 1870, to which report no exceptions having been filed, the same is approved and confirmed. And it appearing from the said report that there is still due to Ann E. Gilmer from Henry Berry, administrator of John Baker, deceased, the sum of five hundred and thirty-six dollars and eighteen cents, with interest from the 1st of January, 1857, and to the administrator of William Lisle Baker the sum of one hundred and two dollars and twenty-one cents, with interest from the 1st day of January, 1857, it is adjudged, ordered and decreed that the said Ann E. Gilmer do recover from the estate of Henry Berry, deceased, and from the estate of William Short, who was the security of the said Henry Berry in the said administration bond, the said sum of five hundred and thirty six dollars and eighteen cents, with interest thereon from the 1st day of January, 1857, until paid; and that the administrator of Wm. Lisle Baker do recover from the estate of Henry Berry, deceased, administrator of the estate of John Baker, deceased, and also against the estate of Wm. Short, his security as aforesaid, the said sum of one hundred and two dollars and twenty-three cents, with interest from the 1st day of January, 1857, until paid; and whereas, it has been suggested that there may be other and further liabilities of Henry Berry as administrator of John Baker, deceased, for which Wm. Short is responsible as his security, and it is desirable to ascertain that fact, it is ordered that this cause be again re-commited to Edward E. Cooke to ascertain and report if there are any further or other liabilities of the said Henry Berry, as administrator aforesaid, for which the estate of Wm. Short, as his security, is responsible; and he will proceed to execute this account by giving notice as provided for in the former decree in this court."

In response to this decree Commissioner Cooke made his report and the conclusions reached and reported by him are stated therein as follows:

"I have considered the question arising in these cases as to the amount of the fund from the proceeds of the sale of Samuel Engle's land, and in whose hands they are, and I report that the part that came to the hands of Henry Berry, one of the special commissioners appointed to sell said land, was three thousand nine hundred and eighty-seven dollars and twenty-one cents, which, with interest to October 1, 1860, amounted to eight thousand five hundred dollars, as taken from my report of March 22, 1870, in these causes.

" And I further report that by operation of the decree of February 20, 1845, hereinbefore copied, the whole fund so in his hands as special commissioner became *ipso facto* and *eo instanti* vested in and held by him as administrator *de bonis non* with the will annexed of John Baker, deceased. On pages 5, 6, 7 and 8 of that report (of March 22, 1870), I have apportioned said eight thousand five hundred dollars between Ann E. Gilmer and Samuel D. Baker and William L. Baker.

"I further report that Andrew Hunter, the other special commissioner, did not transfer the fund in his hands to said Henry Berry as administrator *d. b. n. c. t. a.* of John Baker, deceased, under said decree of February 20, 1845, but he has accounted to the court for and paid all but a part of a note of George W. Sappington and John T. Henkle, yet uncollected, but which is in course of collection, in court."

To this report Berry's administratrix excepted as follows:

1. This is not properly a commissioner's report, but a judicial opinion upon the entries of records or former decrees.

2. It is inconsistent with his former reports and actions without any new evidence.

3. The judicial opinions of the commissioner are erroneous.

4. All the decrees bearing on the subject are not embraced in this report.

In a decree entered September 20, 1871, is the following provision: "By consent of parties, waiving any action of the court on said report of Commissioner Cooke, this cause is referred to Cleon Moore, special commissioner in this cause, with instructions to execute the order of reference

directed by the decree in these causes of the 28th day of April, 1870, and that in addition thereto, that he ascertain and report to this court specially what moneys were received by Henry Berry, as special commissioner, from the sale of lands of Samuel Engle, deceased, when the same was received, and whether any portions of the moneys so received by him was ever loaned out; if so, what amount, and to whom."

Pursuant to said decree Commissioner Moore made his report. He gives a detailed statement of the fund which went into the hands of Berry as special commissioner, the items and dates of which are precisely the same as those given in the report of Commissioner Cooke, dated May 28, 1857, and hereinbefore copied. He then reports that "he has not been able to ascertain that any of said moneys were loaned out by Berry, special commissioner," and that said "Berry is chargeable with said fund as administrator of John Baker, deceased."

Counsel for Short's estate filed exceptions to this report on the following grounds:

1st. It is a judicial opinion of the commissioner which was not referred to him;

2d. It is not justified by the evidence. The whole evidence in the record shows the fund was in the hands of Berry as special commissioner and not as administrator;

3d. No issue has been made in the cause by bill or otherwise to fix upon Berry and his sureties as administrator this alleged liability; and

4th. The claim is barred by the statute of limitations as to the sureties of Berry.

In April, 1874, a decree was entered reviving the cause in the name of Edward Tearney, sheriff, and as such administrator of the plaintiff, Ann E. Gilmer, and the cause was continued as to the question in which capacity, whether as special commissioner or as administrator, the said Berry is chargeable with said fund. On April 28, 1878, leave was granted by the court to the plaintiff, Ann E. Gilmer's administrator, to file an amended bill and by an order entered October 30, 1878, these causes were removed to the circuit court of Berkeley county in which court it was subsequently docketed.

At the October rules 1880, the plaintiff, Ann E. Gilmer's administrator, filed his amended bill in which after setting out the proceedings theretofore had in the cause, he alleges, among other matters, that Henry Berry and Joseph McMurran, one of his sureties as administrator of John Baker, deceased, both died utterly insolvent, leaving the estate of William Short, the other surety, alone responsible for any liability that might be established against said Berry as such administrator; that said Short left as his sole heir and distributee one Margaret Finley who had theretofore instituted her suit in the circuit court of Jefferson county against Vincent W. Butler the administrator of said Short and received from the estate of said Butler a large sum of money all of which has been paid over to her, except a balance of four thousand three hundred and eighty-six dollars and three cents, which, with the accrued interest thereon, was directed by a decree in said suit, entered December 7, 1869, to be paid to Daniel Billmyer the agent of said Finley to be held by him, subject to the order of the court, to meet any decree that might be rendered against the estate of said Short in this suit; that said fund is still in the hands of Billmyer; that said Finley has departed this life leaving Daniel Finley, William Finley and William S. Finley her only heirs and distributees; and that he has filed this amended and supplemental bill in order to introduce these facts. The administrator and distributees of Margaret Finley and others are made defendants to this bill, and it prays, that a decree may be pronounced directing said Billmyer to pay over to the plaintiff said fund in discharge of any liability that may be established in this suit against the estate of said Short, and for general relief.

The administrator and heirs of Margaret Finley answered, denying any liability to the plaintiff on account of the matters alleged in said bill. They also plead the statute of limitations and rely on the lapse of time, and pray that the fund in the hands of said Billmyer may be paid over to them.

These causes came on to be finally heard together on December 16, 1880, and the "court being of the opinion, after a careful examination of the papers, that it does not appear to the satisfaction of the court that the money originally in

the hands of Henry Berry as a special commissioner of the court ever passed into his hands as the administrator with the will annexed of John Baker, deceased, but that it remained and continued in his hands solely in his character as a special cammissioner of the court, it is, therefore, adjudged, ordered, and decreed that the exceptions to the report ot Commisioner Cleon Moore, so for as it seeks to charge him as such administrator, be and the same are hereby sustained, and so much of the proceedings in this cause as seeks to fix a liability for these funds upon Henry Berry as the administrator of John Baker, deceased, or his securities in his administration-bond, be and the same are hereby dismissed with costs."

From this decree and the aforesaid decree of April 28, 1870, the plaintiff, the administrator of Ann E. Gilmer, obtained from this Court an appeal with *supersedeas*.

*Daniel B. Lucas* for appellant.

*Charles James Faulkner* for appellee.

SNYDER, JUDGE:

Before considering the merits it may be more convenient to notice a preliminary question presented by the record. The deposition of Andrew Hunter was taken and excepted to in these causes. Henry Berry and this witness had been joint commissioners, and at the time the deposition was taken Berry was dead and his administratrix is a party to this suit. The ground of the exception is that the testimony relates to transactions between Berry and the witness in regard to a joint liability from which it tends to exonerate the witness and is, therefore, incompetent. This would be true if the witness, Hunter, was a party to the causes. But if he was not a party, then, neither by the common law nor by our statute would his testimony be incompetent. The common law rule is, that a witness is competent, if the proceedings in the cause cannot be used as evidence for him, although he may be interested in the question in issue and entertain wishes on the subject, and even have occasion to contest the same question in his own case in a future suit—*Baring* v.

*Reeder,* 1 H. & M. 154, 165; *Black* v. *Campbell,* 6 W. Va. 51, 64. And, as I understand it, this rule has not been affected by our statute in suits against the representatives of deceased parties—Code, ch. 130, sec. 23. The change made by the statute was intended to remove the common law disability of witnesses on account of interest in the result of the suit except in certain cases, among which is the competency of a party to testify on his own behalf against the representatives of a deceased person in relation transactions had personally with such deceased person. In regard to these exceptions the statute did not change the common law rule either by enlarging or restricting it. The object of the statute was to remove and not create disabilities. *Anderson* v. *Snyder,* 21 W. Va. 632.

Hunter was never a party to any of these casues. He and Berry were appointed special commissioners in the cause of *Washington County Bank* v. *Engle's Administrator et al.,* but as such commissioner he was simply the agent of the court and no decree could have been made against him unless he had been first charged with some default and a rule or other process served on him to answer such charge. *Grinnan* v. *Long,* 22 W. Va. 693. It is a general rule that no action can be properly taken by the court upon any matter not in issue or which is not in the ordinary proceedings of the cause even as against the formal parties without a rule or notice to answer, and much less can it be done against a special commissioner who is not such party. *Alderson* v. *Gwinn,* 3 W. Va. 229. A purchaser at a judicial sale is a *quasi* party from the time of his purchase. *Kable* v. *Mitchell,* 9 W. Va. 492. But no decree can be rendered against such purchaser until a rule or some other process has been taken against him. *Clarkson* v. *Read,* 15 Gratt. 288; *Glenn* v. *Blackford,* 23 W. Va. 182.

The witness, Hunter, then, not being a formal party and no rule or other process having been taken against him, no decree could be entered in these causes that would bind him, nor could the record be used as evidence for him in any future suit against him, and he was, therefore, a competent witness to testify as to the matters referred to in the exception to his deposition.

Upon the merits the material question is, whether the

estate of William Short, the surety of Henry Berry as administrator *de bonis non* with the will annexed of John Baker, deceased, is liable for the fund which went into the hands of Berry as the proceeds of land sold by Hunter and Berry as special commissioners? The origin and history of this fund sufficiently appear in the statement preceding this opinion. It was loaned out by said commissioners under the order of the court and thus continued in their hands as such commissioners and under the control of the court, at least, until February 20, 1845, when the judge of the court, by the consent of the parties, entered a decree in vacation, ordering said commissioners to pay over said fund to Henry Berry, administrator *de bonis non* with the will annexed of John Baker, deceased. Prior to the date of this order, said commissioners had separated the fund, Hunter taking charge of one portion, about one half, and Berry of the other portion. On November 6, 1846, nearly two years after this decree had been entered, Johns Hopkins, surviving partner of Hopkins & Bros., filed his bill of review to have the same reversed and set aside, but no restraining order was then made or thereafter until October 19, 1848, when said Hopkins filed his original bill and obtained from the court an injunction restraining the commissioners from paying over said fund to Berry, administrator, &c., as ordered by said decree of Febuary 20, 1845.

The said bill of review having been previously dismissed the court in November, 1849, dissolved this injunction and dismissed the bill. From this decree the plaintiff, Hopkins, appealed and that cause continued in the appellate court until March 4, 1856, when a decision was rendered by the special court of appeals reversing said decree of November 1849, and ordering the injunction to be reinstated with a specified modification—2 Pat. & H. 110.

It is conceded that the portion of said fund which was received by Hunter as special commissioner, never passed into the hands of Berry as administrator of Baker. That portion has been accounted for by Hunter and it is not now in controversy. The important enquiry here is, in what capacity, whether as special commissioner or as administrator of Baker, did Berry hold the portion of the fund received by him, on October 19, 1848, the time said order of injunction was made?

The proof, shows, (see statement of Commissioner Cooke, hereinbefore given,) that Berry had received the whole of his portion of the fund prior to the decree of February 20, 1845, except eight hundred and twenty-five dollars, which he received in July, 1845. It therefore distinctly appears that he had all of it in his hands long before the date of the injunction. The statment of the commissioner just referred to, also shows, that prior to the date of the order of February 20, 1845, Berry had loaned to, and *taken the notes* of, one of the distributees of Baker for a part of the fund and that between that date and the date of the injunction he had paid over to, and *taken receipts* from, another distributee for a large portion of said fund; thus by taking notes for the money loaned before, and receipts for that paid after the order of February 20, 1845, Berry indicated most distinctly and unequivocally that he held the fund prior to that date as special commissioner and subsequently as administrator of Baker.

If this convincing evidence, that Berry had complied with the order of February 20, 1845, by holding and treating the fund thereafter as held by him in his capacity of administrator of Baker, could require confirmation, such confirmation appears strongly in other parts of the record. Hunter states in his deposition that from frequent conversations had by him with Berry after the order of 1845, and before the injunction was granted, he regarded that fund in Berry's hands as administrator of Baker. Also, Berry, in his answer to Hopkins's bill, which is sworn to by him, says: "He claims to hold said fund *as such* against the plaintiff." The context plainly shows that the words "*as such*," refer to him as such administrator of Baker. But it is insisted by counsel for the appellees that this sworn statement of Berry is simply an admission by him of a past transaction and is, therefore, not admissible as evidence against his surety. 1 Gr. Ev. sec. 187. If this statement or admission had been made after Berry had ceased to be administrator of Baker, and out of the course of his official duty, it would not be admissible against his surety. But such was not the fact. It was made while he was administrator and in the discharge of an official act as such administrator. It is made in an answer filed by him in defence of the fund and in the per-

formance of an act by him as administrator. It is a part of the *res gesta* in connection with the very transaction now in question and was made by him in his official capacity, while in the actual discharge of his duties as administrator. It is, therefore, clearly admissible not only against him but against his sureties as such administratior. 1 Gr. Ev. secs. 174, 178, 179, 180; *Cavendish* v. *Fleming*, 3 Munf 198; *Swope* v. *Chambers*, 2 Gratt. 320, 324; *Cox* v. *Thomas*, 9 *Id.* 323; *Snowball* v. *Goodricke*, 4 B. & Ad. 541.

Hunter further states in his deposition that soon after the decree of February 20, 1845, or the decree of June 1, 1848, but he thinks the former, the counsel for Baker's distributees demanded of him the payment of that portion of the fund in his hands as special commissioner, in compliance with said decree of February 20, 1845, and that he declined to pay it over until he could consult with Hopkins, his client, but stated distinctly at the time that the claim of Hopkins only extended to the half of the fund in his hands, and that Hopkins made no claim to the part in Berry's hands, and in these facts Berry fully concurred with him. He says he is positive this conversation occurred long before the injunction was granted, and he has no hesitation in stating from other conversations had with Berry, that it was the understanding between them from the date of the decree of February 20, 1845, that Hopkins set up no claim to that portion of the fund in Berry's hands. It is insisted, however, that this deposition is in conflict with the facts in the injunction bill of Hopkins, which was prepared and sworn to by the witness, Hunter. Is such the fact? This bill simply states that there is a large fund in the hands of Berry and Hunter as special commissioners, which "is applicable to and was specially set apart for the payment of said bonds," referring to the bonds constituting that part of the fund claimed by Hopkins, and prays "that the proceeds of said bonds *as now in the hands of the court* constituting the fund aforesaid may be paid over to" the plaintiff and said commissioners restrained from paying it over as directed by said decree of February 20, 1845.

This bill, it seems to me, instead of contradicting the deposition strongly affirms it. If that portion of the fund

received by Berry as commissioner had passed into his hands as administrator of Baker long before the injunction was filed, as stated in the deposition, then the only fund which · could have been in the hands of the commisioner when the injunction was applied for, was that in the hands of Hunter and which, as the bill and deposition both state, had been "specially set apart for the payment" of the Hopkins claim.

It does not detract from this view that the bill avers that the fund was held by both commissioners. The court could not regard the private arrangement of the commissioners by which a part of the fund was taken charge of by one and the residue by the other. The portion held by either was constructively and legally in the hands of both and it was therefore not only proper but essential that the bill should aver that it was held by them jointly, notwithstanding the fact that it was in the actual possession of Hunter alone.

Upon these facts and for these reasons it seems to me plain, that from and after the date of said decree of February 20, 1845, Berry did in fact hold and treat the fund in his hands as administrator *de bonis non* with the will annexed of John Baker. This much is, I think, conclusively established; and it necessarily follows as a corollary that this fund thus in Berry's hands was never controlled or affected by the Hopkins injunction, provided the fund was legally and rightfully taken charge of by Berry as such administrator. The injunction did not propose to embrace any fund except that in the hands of Berry and Hunter as special commissioners; and if this fund was in the hands of Berry not as commissioner but as administrator, of course it was not embraced or affected by the injunction.

It is claimed, however, by the counsel for the appellees that this fund was not rightfully and legally in the hands of Berry as such administrator. In support of this position it is contended that the said decree of February 20, 1845, which directed the commissioners to pay over the fund to Berry as administrator, was an absolute nullity and without any legal sanction or effect, because it was entered in vacation, and also because it was set aside and swept away by the decree of the court of appeals in the case of *Hopkins* v. *Baker's Adm'r*, 2 Pat. & H. 110.

In my view of the question, it is not important whether the "consent of the parties," stated in this decree, was intended to be confined simply to the entering of it by the judge in vacation or extended to the matters decided by it. The context strongly indicates that the latter was its effect.

But assuming that the consent of the parties was merely that it might be entered in vacation instead of in term, what was its effect, if any, on the matter now in question? As such it would certainly be held erroneous and perhaps void as an adjucation of adverse rights or claims. *Monroe* v. *Bartlett*, 6 W. Va. 441; *Johnson* v. *Young*, 11 *Id.* 673; *Rollins* v. *Fisher*, 17 *Id.* 578. But so much of it as constituted simply an order or direction, *ex parte* in its character, or such as a judge might properly enter in vacation, would not in my opinion, be regarded as a nullity. The statute of Virginia authorized any circuit judge, in vacation, to direct any proper account to be taken in a cause in any court of his circuit—Code Va. ch. 175 § 6. The order entered in this cause directing the commissioners to pay over the fund to Baker's administrator was administrative and *ex parte* in its nature. If the direction was proper it was the duty of the court to make it and it cannot be material when the parties consented, that it made was by the judge in vacation. The court of appeals of Virginia has never declared such a decree void but merely erroneous. *Tyson* v. *Glaize*, 23 Gratt. 799.

And it is elementary law that an erroneous decree so long as it remains unreversed is as obligatory and effective as any other decree. *Franklin* v. *Depriest*, 13 Gratt. 257. If said decree was a nullity, it was a very useless and perfunctory act to apply for and prosecute the injunction against it. It was certainly not so regarded by the special court of appeals; for that court said in its opinion that, "if it had been appealed from by Hopkins Brothers it might have been affirmed." 2 Pat. & H. 121.

In the mandate of that court, after reversing the decree of November, 1849, (the only one appealed from,) and remanding the cause to the circuit court with directions to have the bill of Hopkins amended by having the proper parties made to it, the order proceeds: "And when the cause shall be properly matured for hearing, to decide the cause according

to the rights of the parties, without regard to any decision heretofore made in this or any suit referred to in the bill, answer or proceedings in this cause, which has been made, or has been alleged to have been made, *as bearing upon the questions that may arise on the hearing of this cause.*" 2 Pat. & H. 123. The counsel for appellees argues that by this direction, the said decree of February 20, 1845, was entirely abrogated and effectually swept away. In view of what the court had just said in its opinion and the qualification made by the words, "*bearing upon the questions that may arise on the hearing of this cause,*" it does not seem to me that such could have been intended to be the effect of that part of the mandate. The only parties before the court on that appeal were Hopkins and Baker's administrator. No appeal was taken from the decree of February 20, 1845, and the suit in which it was pronounced was only collaterally in that court. In the light of these facts, I think it would be unjust to the intelligence of that court to assume that it intended to abrogate and annul said decree of February 20, 1845, a thing which it had neither the legal right nor the jurisdiction to do. What it did, and intended to do, is apparent. It directed the injunction as modified to be reinstated and ordered the circuit court to dispose of the fund operated upon by the injunction according to the rights of the parties, without regard to said decree of February 20, 1845, against which the injunction had been awarded, or the decree of November, 1849, dismissing the bill of Hopkins. This is plainly all the court had jurisdiction to do on that appeal and it is all that a fair and reasonable construction of its mandate imports. And, as we have seen, the portion of the fund received by Berry, having passed into his hands as administrator before the injunction was granted and was consequently not embraced by it, the mandate of the appellate court did not and could not affect it.

It is further contended that, if it be true, as we have held it is, that Berry did in fact, so far as it was in his power to do so, pass his portion of the fund to his account as administrator of Baker, still he and his sureties as such administrator cannot be made liable for it; because, as it is insisted, said fund had been converted and administered by Tapscott,

the executor of Baker, and had ceased to be assets of Baker's estate before Berry qualified as administrator of Baker.

It is undoubtedly true that an administrator *de bonis non* has the right only to administer the assets of the decedent not administered by the former administrator and that he is not entitled to administer assets converted by his predecessor— *Wernick* v. *McMurdo*, 5 Rand. 51; *Estill & Eakle* v. *McClintic*, 11 W. Va. 399; *Potts* v. *Smith*, 24 Am. Dec. 359.

While this rule is strictly observed by the common-law courts, it is subject to certain modifications and exceptions in courts of equity. The latter courts look to the real transaction and regard the equitable rights and duties of the parties. But it is unnecessary in this case to enter upon a discussion of these equitable principles. The right and duty of the administrator *de bonis non* to administer the fund now in question was determined by the appellate court on the appeal of Hopkins. The court in its mandate directed a part of this fund to be paid over to said administrator to be administered by him—2 Pat. & H. 123. If it was legal for said administrator to receive and administer a part of this fund, as that court held it was, it surely could not be unlawful for him to administer the residue.

But the General Assembly of Virginia on April 6, 1839, before Berry qualified as administrator *de bonis non* of Baker, passed an act which is conclusive on this question. This act provides that it shall be lawful for the administrator of an administrator or executor to pay over and transfer to the administrator *de bonis non* of the first decedent "all the assets and unadministered estate, *including bonds taken for the sales thereof*, which may be in the possession of said executor or administrator at the time of his removal or death, and all the assets, *bonds and estate* thus paid over and transferred, *shall be assets in the hands of the administrator de bonis non*, subject to debts, legacies and distribution in all respects as before said removal or death"—Acts 1839, ch. 70 p. 44. Whatever may have been the law before this act was passed, it cannot be doubted that after its passage this fund, when it came to the hands of Berry as administrator *de bonis non* of Baker, was assets in his hands and as such he and his sureties were

accountable for it—*Burnley* v. *Duke*, 2 Rob. 102; *Tyler* v. *Nelson*, 14 Gratt. 214.

If it had been shown that this fund had been disposed of by Berry while in his hands as commissioner and he had become insolvent before the decree of February 20, 1845, ordering him to pay it over to himself as administrator, his sureties could not be made responsible for it. A fiduciary cannot transfer his mere indebtedness in one capacity to himself in another capacity so as to exonorate his sureties in the one and throw the burden upon his sureties in the other. To make the transfer valid it must consist of something more than a naked liability; it must be substantial assets if made by an insolvent fiduciary—*Smith* v. *Gregory*, 26 Gratt. 248; *Phillipo* v. *Munnings*, 14 Eng. Ch. R. 309, 315.

But if the fund was in the hands of Berry at the time said order was made or if it came to his hands thereafter and before the injunction was granted, or if he was then solvent and able to pay it over, all that was necessary, in any of these events, to fix his liability as administrator, was for him to make his election to hold it as administrator, and manifest it by some act, declaration or admission—*Swope* v. *Chambers*, 2 Gratt. 319; *Morrow* v. *Peyton*, 8 Leigh 54; *Piper's Estate*, 15 Pa. St. 533; *Gottsberger* .v. *Taylor*, 19 N. Y. 150.

That Berry did manifest his election to hold the fund as administrator has already been shown; and there is not a particle of evidence even tending to prove that he had disposed of it before he was ordered to receive it as administrator or that he was then insolvent. It is true the amended bill avers that his estate was insolvent when he died in 1869, twenty-four years after. But this certainly does not prove he was insolvent in 1845. It appears, on the contrary, that a part of the fund was received by him in July, 1845, shortly after the order was made and that in April, 1848, he paid over a large part of it to one of the distributees. I am, therefore, of opinion, for the reasons stated, that Berry in his capacity of administrator *de bonis non* of Baker and his sureties as such are properly chargeable with said fund, unless they have by some act or otherwise been discharged from liability for it.

The next enquiry is, what effect has the decree of April

28, 1870, hereinbefore given in full, on the said liability of Berry and his sureties? This decree confirms the report of commissioner Cooke of March 22, 1870, to which there was no exception. The report stated an account between the estate of John Baker and Henry as special commissioner and included therein the fund now in question. It also stated accounts between said estate and Berry as the administrator thereof and between Berry and the distributees of said estate. If this fund was embraced in said decree and the liability of Berry as special commissioner therefor and the rights of the parties thereto, determined and fixed by it, then such determination would conclude this controversy. There having been no exception to said report and no error appearing upon its face which might not be affected by extrinsic evidence, it could not, after confirmation, be reviewed by this Court, whether it is treated as a final or simply an interlocutory decree—*McCarty* v. *Chalfant*, 14 W. Va. 531; *Ward* v. *Ward*, 21 *Id.* 262; *Cole* v. *Cole*, 28 Gratt. 365. But, if on the other hand, the fund in question and the liability of Berry therefor and the rights of the parties thereto, were not embraced in and determined by said decree, then it is equally conclusive that this controversy was not settled by it.

An inspection of said decree will show that while it specifically disposes of all the other accounts and matters contained in the report, it makes no order or direction in reference to the account reported between the estate of Baker and Berry as special commissioner. It makes no mention of any liability against Berry as special commissioner or of the fund reported in his hands as such, but expressly recommits the cause to Commissioner Cooke, "to ascertain and report if there are any further or other liabilities of said Henry Berry, as administrator aforesaid, for which the estate of Wm. Short, as his security is responsible." Unless this fund was in contemplation when that order of reference was made there could have been no ground or reasonable cause for making it. No other liability had theretofore appeared and none ever made its appearance thereafter. There was nothing else in the record even to suggest, much less to justify, an order of reference. We cannot presume that the

court did what it had no authority to do, yet we would be compelled to do so, unless we hold that some further liability on Berry as administrator had been suggested or brought to its attention and as none then appeared, or has been since discovered, other than the fund then appearing against him as special commissioner, we must conclude that the "further or other liabilities," which had been suggested to the court included, if it was not confined, to this fund. I do not, therefore, think that said decree of April 28, 1870, was conclusive, either of the liability of Berry for, or the rights of the distributees of Baker to, said fund. The said decree had no affect upon said fund; the whole question in reference to it was left open by it for the future consideration of the court upon the return of the report of Commissioner Cooke therein directed.

This conclusion virtually disposes of all the exceptions of the appellees to the subsequent reports of Commissioners Cooke and Moore, in which they respectively report that Berry is chargeable with said fund as administrator of John Baker, except the one which relates to the bar of the statute of limitations. It is insisted that all the reports made in these causes prior to the two above mentioned, uniformly treated said fund as being in the hands of Berry as special commissioner. In reply it may be stated, that none of those reports were confirmed by the court in regard to said fund; and, consequently, said report can have no effect or value except as judicial opinions of the commissioners who made them, and by these opinions we are not bound.

In regard to the defence of the statute of limitations and the lapse of time, it is sufficient to state, that the fund belonging to the estate of William Short, the surety of Berry as administrator, which is sought to be subjected to the plaintiff's demand in this cause, is a personal fund and Short's administrator has at all times, during the progress of this suit, from 1853 to the present, been a party. There is nothing in the record to show that Short ever had any real estate, much less that the fund now in the hands of Billmyer is the proceeds of the sale of *his* real estate. It does appear that it is a part of the proceeds of the real estate of Vincent M. Butler, the administrator of Short, but it does not appear

what the character of the assets of Short was which pro-
duced the liability against Butler as his administrator. In
the absence of any proof on the subject we must presume
that it was a personal fund as it went into the hands of Short's
administrator. In this view it was entirely unnecessary to
have made the heirs of Short parties to the amended bill in
this cause. I am, therefore, of opinion that all the excep-
tions of Short's and Berry's administrators to the aforesaid
reports of Commissioners Cooke and Moore be overruled
and that said reports should be confirmed.

It necessarily follows from the conclusions thus arrived at,
that the final decree of the circuit court of Berkeley county,
pronounced in this cause, and the several causes heard with
it, on December 16, 1880, must be reversed with costs to the
appellants against the estates of Henry Berry, deceased, and
his sureties as administrator of John Baker, deceased, and
the appeal from the aforesaid decree of April 28, 1870, must
be dismissed as having been improvidently awarded. And
this cause is remanded to the said circuit court for further
proceedings according to the principles announced in this
opinion.

REVERSED.  REMANDED.